IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DARIO E. ROMAN RIVERA, IN HIS PERSONAL CAPACITY AND D/B/A MAGNOLIA SHELL.; ARGELIA SIÑERIZ PUIG; ROBERT R. GROSSMAN, HIS WIFE EILEEN VICENTE AND THE CONJUGAL PARTNERSHIP WHICH THEY CONSTITUTE; TACO MAKER LARES, INC.; RICHARD CORTES TORRES, HIS WIFE EVA NAZARIO AND THE CONJUGAL PARTNERSHIP WHICH THEY CONSTITUTE; LESLIE V. RIVERA BURGOS IN HER PERSONAL CAPACITY AND IN REPRESENTATION OF THE CONJUGAL PARTNERSHIP SHE CONSTITUES WITH HER HUSBAND; JAVIER CLAUDIO CARRILLO IN HIS PERSONAL CAPACITY AND IN REPRESENTATION OF THE CONJUGAL PARTNERSHIP HE CONSTITUTES WITH HIS WIFE; LUIS GARCIA RAMIREZ;   MIGUEL ANGEL GRILLET; AND MARY J. MENENSCHWANDER | CIVIL NO.11- 2003 <br><br> RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT "RICO" AND CLASS ACTION <br><br> PLAINTIFFS DEMAND TRIAL BY JURY |
| **Plaintiff** | |
| **V.** | |
| PUERTO RIO ELECTRIC POWER AUTHORITY; OTONIEL CRUZ CARRILLO, ACTING EXECUTIVE DIRECTOR; MIGUEL A. CORDERO LOPEZ, FORMER EXECUTIVE DIRECTOR; JORGE RODRIGUEZ, FORMER EXECUTIVE DIRECTOR; MEMBERS OF THE GOVERNING BOARD JOSE L. VAZQUEZ HOMS; LUIS M. GARCIA PASSALACQUA; JOSE FERNANDEZ POLO; LUIS ABBOTT VAN DER HORST; MARIMAR PEREZ RIERA; ANDRES SALAS SOLER; NYDIA VERGE PEREZ; JEROME GARFFER  CROLY; JOSE PEREZ CANABAL; EUGENIO  TORRES OYOLA; FRANCISCO J. DE ECHEGARAY ESPADA; MARIA A. VERAS FERNANDEZ, ALL IN THEIR PERSONAL AND OFFICIAL CAPACITIES. | |
| **Defendant** | |

## COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW the plaintiffs. through their undersigned attorney and very respectfully state, allege and pray:

### I. JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a). Venue is proper pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965.

### II. THE RICO ALLEGATIONS

2. The Puerto Rico Electric Power Authority (PREPA) was created pursuant to Act No. 83, of May 2, 1941. It is the only provider of electric power in Puerto Rico. PREPA was created "for the purpose of conserving, developing and utilizing the water and power resources of the Commonwealth of Puerto Rico in order to promote the general welfare and to increase commercial activity in and the prosperity, of the Commonwealth." PREPA is heavily involved in interstate commerce by purchasing most, if not all of its equipment and supplies in this commerce. In addition, PREPA sends monthly bills to plaintiffs and the class via U.S. mail and the Internet, in violation of 18 U.S.C. § 1341 and § 1343.

3. PREPA is governed by a Governing Board consisting of 9 members, 7 of which are named by the Governor with the consent of the Senate. Two other members are elected by the Public via write in ballots. The day-to-day operations of PREPA are carried out by its Executive Director. Both the Governing Board and the Executive Director are involved in interstate commerce by purchasing most if not all of PREPA's equipment and supplies in this commerce. In addition, the Governing Board and the Executive Director authorize and direct

the sending of the monthly bills to plaintiffs and the class via U.S. mail and the Internet, in violation of 18 U.S.C. § 1341 and § 1343, had their meetings in which they consorted the pattern of racketeering described herein, convened through these same methods.

4. In June of 2000, PREPA and some of the Defendants established a new tariff scheme. This scheme included a fuel adjustment charge (FAC) to be paid by its customers both for the electricity PREPA generates and the electricity it purchases from two cogenerating companies. PREPA sends its bills to its clients via U.S. Mail or via Internet. Since 2000, these bills have been fraudulent for they have been inflated as discussed infra. The sending of these bills constitutes mail and wire fraud pursuant to 18 U.S.C. §1341 and  §1343.

5. The  FAC is put into effect by PREPA and Defendants via a formula designed by them. This formula includes a factor of 1/.89. This factor is justified by PREPA in order to allegedly recoup the payment of an 11% in lieu of taxes to the Municipalities, as required by Commonwealth law. However, PREPA has failed to pay the 11% to the Municipalities in part or in totó for the past 11 years. In addition, the factor of 1/.89 in the formula has the effect of increasing the consumer's bill not by 11% but by 12.3595%. Hence, even if PREPA paid the alleged 11% in lieu of taxes to the Municipalities, which it has not, it would still be overcharging its customers by 1.3595% of the FAC. Inasmuch as PREPA does not pay the aforementioned 11% to the Municipalities, it is in effect overcharging its clients since at least June 2000 an amount equal to 12.3595% of the FAC.  This same factor of 1/.89 is present when PREPA charges its customers for the energy it sells them which it purchases from the cogenerating plants, hence overcharging them for 12.3595% of their power purchase. Upon information and belief, PREPA also fails to pay its fuel on time, incurring in additional charges, which not only inflates the price of the fuel but also increases the extracting effect of the 1/.89.

6. In addition, PREPA generates more electricity than it sells. PREPA and Defendants, however, bill the former's customers for all the fuel it purchases to generate the electricity, not for the fuel used to generate the electricity it actually sells. PREPA also charges its customers for the entire amount of electricity purchased instead of charging for the amount of electricity it purchases and actually sells to its customers. This is another overcharge that PREPA performs on its clients. These overcharges are sent over the US mail and interstate wire, in violation of 18 U.S.C. § 1341 and § 1343.

7. Moreover, when one examines the customers and plaintiffs' bills, one notices another PREPA overcharge. If a hypothetical PREPA client has consumed 1,000 kWhs, he is being charged $.041 per kWh for the purchase of said 1,000 kWh of energy AND $.20 per kWh for PREPA's purchase of 1,000 kWh of fuel. In other words, the Puerto Rican consumer is not being charged every month for the purchase of fuel and energy of 1,000 kWh but for the purchase of fuel and energy of 2,000 kWh. Instead, the charges should be prorated according to how much electricity PREPA generated or bought for each billing period. This scheme also results in overbilling to PREPA customers. These overcharges are sent to all of PREPA's consumers via bills over the U.S. mail and Internet by PREPA and Defendants. This constitutes mail and wire fraud pursuant to 18 U.S.C. §1341 and §1343.

8. These overbilling procedures allow PREPA, among other things, to comply with its obligations to bondholders. According to the trust indenture summary of one of PREPA's Official Statements, "the Authority convenants that it will at all times fix, charge and collect reasonable rates and charges for the use of the services and facilities furnished by the System so that Revenues will be at all times sufficient to pay the Current Expenses of the System and to provide an amount at least equal to 120% of the aggregate Principal and Interest Requirement

for the next fiscal year on account of all outstanding Power Revenue Bonds. This is important since "the Base Rate charged by PREPA has not changed since 1989 and the only way it can satisfy the debt service coverage requirement for an increasing debt burden is through the fuel adjustment and purchased energy charges." (Center for the New Economy, *Darkness Visible: A Financial Analysis of the Puerto Rico Electric Power Authority,* June 2010, page 24 and *A New Look at Puerto Rico's Electricity Sector*, January 2009, page 19). At all times herein material PREPA and Defendants acted intentionally or with reckless indifference tot eh truth. They also acted that their acts were part of a pattern of racketeering

9. As stated before, PREPA and Defendants fraudulently sent monthly bills to its customers since June 2000 that did not reflect their real consumption of electricity, that did not reflect the real cost of power purchase or the real cost of fuel used to generate the electricity consumed by them, and charges them twice for fuel and power purchase. These bills were false bills, inflated to profit PREPA and Defendants. These actions are a pattern of racketeering as defined by the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §1961, et. seq. (RICO) and its case law. According to the  Center for the New Economy, between 2000-2004, the overcharge amounted to around $439.6 millions.   PREPA and Defendants used the proceeds of this pattern of racketeering performed in the past and onto many other customers not part of this class, to continue with their fraudulent practices to overcharge the representative plaintiffs and the class. These actions by PREPA and Defendants have caused  harm to plaintiffs and the class in their business or property.

10. In addition, PREPA and Defendants have invested the proceeds derived from this pattern of racketeering in maintaining an antiquated system and older technology instead of investing new technology. For example, neither PREPA nor Defendants have made the switch

to less expensive fossil fuels such as natural gas or aeolic technology because the former is less expensive than the present oil based system and would decrease the money extracted through the FAC. The later would do away with the FAC entirely, further decreasing the overcharges. Also, PREPA and Defendants have invested the proceeds of this pattern of racketeering in hiring an excess of employees, both union and management, which increases the payroll, requiring the increase in bond emissions, costs which are passed only to the plaintiffs and the class. PREPA and Defendants also used this fraudulent scheme to incur in late charges in the payment of its fuel bills, further increasing the overbilling via the FAC.

11. The Governing Board and the Executive Directors have been overseeing and executing these fraudulent practices. In addition, the Governing Board and the Executive Director decide at least every year whether PREPA will pay the municipalities the 11% in lieu of taxes, which is charged with each bill sent to plaintiffs and the members of the class and determine as their meetings. These meetings are convened through the use of the US mail and wire, in violation of 18 U.S.C. § 1341 and § 1343.

12. The representative plaintiffs and the members of the class as defined infra, were harmed in their business or property by the use by PREPA of this pattern of racketeering. All of the representative plaintiffs and the members of the class as herein defined have been paying bills sent by PREPA and Defendants for at least the past four years.

### III. PARTIES

13. Plaintiffs Dario E. Roman Rivera, d/b/a Mobil Oil Caribe, Inc.; Argelia Sineriz Puig; Robert R. Grossman, his wife Eileen Vicente;; Richard Cortes Torres, his wife Eva Nazario; Leslie V. Rivera Burgos; Javier Claudio Carrillo; Luis Garcia Ramirez;  Miguel Angel

Grillet; and Mary J. Menenschwander are all residents and citizens of the Commonwealth of Puerto Rico.

14. Plaintiff Taco Maker Lares, Inc. is a corporation incorporated pursuant to the laws of the Commonwealth of Puerto Rico, where it has its principal place of business.

15. The Puerto Rico Electric Power Authority (PREPA) is a public corporation created by a statute of the Commonwealth of Puerto Rico's.

16. Otoniel Cruz Carrillo, is the acting Executive Director of PREPA. Miguel A. Cordero Lopez, is a former Executive Director as well as Jorge Rodriguez. Jose L. Vazquez Homs; Luis M. Garcia Passalacqua; Jose Fernandez Polo; Luis Abbott Van Der Horst; Marimar Perez Riera; Andres Salas Soler; Nydia Verge Perez; Jerome Garffer Croly; Jose Perez Canabal; Eugenio Torres Oyola; Francisco J. De Echegaray Espada; Maria A. Veras are all members of PREPA's Governing Board. This group is denominated herein as Defendants.

## IV. CLASS ACTION ALLEGATIONS

17. Plaintiffs seek certification of the following class ("the Class"):

All consumers of the electricity sold by PREPA, both individual and corporations, who were overcharged by PREPA, as described in this complaint, between the year 2007 and the present.

18. Excluded from this definition are this Honorable Court, its fellow judges and employees and all suppliers to PREPA.

19. This action is brought and may properly be maintained as a class action on behalf of the proposed Class described above, and such other additional classes or subclasses as Plaintiffs may propose and/or the Court may designate, pursuant to the applicable and appropriate provisions of Rule 23(a)(1)-(4), (b)(3), (b)(1), (b)(2), (c)(4) and/or (c)(5).

**A. Numerosity Of The Class And/Or Subclasses — F.R.C.P. 23(a)(1)**

20. The Class consists of over a million individuals and businesses who have been economically damaged by the aforementioned pattern or racketeering, making joinder impracticable. Class members can be informed of the pendency of this action by print, internet, and broadcast notice.

**B. Commonality — F.R.C.P. 23(a)(2)**

21. Common questions of law and fact exist as to all members of the Class. Because PREPA's scheme of overbilling is the same for all members of the Class, its members will be subject to common questions of law.

22. These common questions of fact and law predominate over the questions affecting only individual class members. The common questions include, but are not limited to:

a. Whether PREPA and/or Defendants overcharged its customers by 12.3595% via the 1/.89 in the FAC;

b. Whether PREPA and/or Defendants overcharged its customers by charging them for all the fuel and power it purchased instead of the fuel and power it used to generate the power it sold them;

c. Whether PREPA and/or Defendants overcharged its customers by charging them for both the power and fuel purchased for the total of their monthly individual consumption instead of prorating them;

d. Whether PREPA and/or Defendants overcharged its customers by paying late its fuel and power suppliers and passing this late charge to the members of the Class;

e. Whether PREPA and/or Defendants invested the proceeds of past overcharges to present members of the class and those not of the class in order to fund and continue the above mentioned pattern of racketeering;

f. Whether PREPA and/or Defendants invested the proceeds derived from the above-mentioned pattern of racketeering in maintaining an antiquated system and older technology instead of investing in new technology;

g. Whether PREPA and/or Defendants have invested the proceeds of the above mentioned pattern of racketeering in hiring an excess of employees, both union and management, which increases the payroll, requiring the increase in bond emissions, costs which are passed only to the plaintiffs and the class;

h. Whether PREPA and/or Defendants invested the proceeds derived from the above-mentioned pattern of racketeering in maintaining an antiquated system and older technology instead of investing in new technology that would use cheaper sources such as natural gas, aeolic or photovoltaic energy.

i. Whether PREPA and/or Defendants engaged in a pattern of mail and wire fraud in direct violation of RICO statutes;

j. Whether PREPA and /or Defendants have violated federal RICO laws as described in this complaint;

k. Whether Plaintiffs have been injured in their business or property as a result of Defendants' acts, misrepresentations and omissions that constitute RICO violations.

**C. Typicality — F.R.C.P. 23(a)(3)**

23. The claims in this RICO Class Action Complaint are typical of the claims of the Class in that they represent the various types of injury to business or property caused by the fraudulent billing practices as stated above. Each Class member's claim arises from the same course of planning, decisions, and events, and each Class member will make similar legal and factual arguments to prove Defendants' RICO violations.

**D. Adequacy Of Representation — F.R.C.P. 23(a)(4)**

24. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in complex litigation and class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

**E. Class Certification Under F.R.C.P. 23(b)(1), (b)(2), And (b)(3)**

25. Class certification pursuant to Rule 23(b)(1) is appropriate because the prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class, and could substantially impede the ability of other members to protect their interests.

26. Class certification pursuant to Rule 23(b)(2) is also appropriate because Plaintiffs and all members of the proposed class seek injunctive relief under federal Law.

27. Class certification pursuant to Rule 23(b)(3) is also appropriate because class action treatment is a superior method for the fair and efficient adjudication of the controversy. Common issues predominate over individual issues, and there is no interest by members of the class in individually controlling the prosecution of separate actions. The size of the class

renders joinder impracticable, and failure to certify the class will likely prevent individuals who have been damaged by Defendants' fraudulent scheme from pursuing their claims. Without a class action, individual class members would face burdensome litigation expenses, deterring them from bringing suits that would adequately protect their rights. Whatever difficulties may exist in the management of the class action are greatly outweighed by the class action procedure that would provide claimants with a method for the redress of claims that they may not otherwise be capable of pursuing. The class action device is superior to individual litigation under the circumstances of this case because it provides the benefits of unitary adjudication, judicial economy and economies of scale

28. The class action device in this civil RICO action provides access to the courts and a measure of justice and accountability for the individual and business claimants whose incomes, business and properties have been damaged by PREPA's fraudulent and unlawful conduct.

29. The Plaintiffs and all Class members seek treble damages for their injury under the federal civil RICO provisions of 18 U.S.C. § 1964(c)**,** including but not limited to economic damages for injury to their income and business, cost of the suit, attorney's fees, injunctive relief and any other relief to which they may be entitled in law and/or equity. The Plaintiffs and the Class members do not seek damages for personal injury.

## IV. CLAIMS FOR RELIEF

**COUNT 1: By plaintiffs against PREPA only for violation of 18 U.S. C. § 1962(a)**

30. Plaintiffs realllege and incorporate by reference all previous paragraphs. The RICO statute states, *inter alia,* as follows:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or

invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

31. PREPA, as discussed before, fraudulently sent monthly bills to its customers since June 2000 that did not reflect their real consumption of electricity, that did not reflect the real cost of power purchase or the real cost of fuel used to generate the electricity consumed by them. These bills were false bills, inflated to profit PREPA as stated before. These actions are a pattern of racketeering as defined by RICO and its case law. According to the  Center for the New Economy, between 2000-2004, the overcharge amounted to around $439.6 millions. PREPA used the proceeds of this pattern of racketeering performed in the past and onto many other customers not part of this class, to continue and fund their fraudulent practices to overcharge plaintiffs and the class as described here. These actions by PREPA has caused harm to the representative plaintiffs and the class in their business or property.

32. PREPA has also invested the proceeds derived from this pattern of racketeering in maintaining an antiquated system and older technology instead of investing new technology. PREPA has invested the proceeds of this pattern of racketeering in hiring an excess of employees, both union and management, which increases the payroll, requiring the increase in bond emissions, costs which are passed only to the representative plaintiffs and the class. PREPA also used its fraudulent scheme to incur in late charges in the payment of its fuel bills, further increasing the overbilling via the FAC. This reinvestment of the proceeds from the aforementioned pattern of racketeering has artificially maintained high the electric bills of plaintiffs and members of the class, causing them harm in their property and businesses. Without this extra income derived from the patter of racketeering, PREPE would have been forced to proceed to purchase modern technology, would have been incapable of hiring extra

personnel to further burden its consumers. In addition, it would not have had to increase the indebtness via bond emissions, which are paid by plaintiffs and the class via inflated and false monthly bills.

33. In addition, PREPA has invested in maintain an antiquated system that burns oil instead of the cheaper and cleaner natural gas, aeolic and photovoltaic energy for they would decrease or eliminate the extraction of overcharges via the 1/.89 in the FAC. This would decrease the illegal benefits PREPA has been extracting from its customers. All actions by take by PREPA as described in this count were taken intentionally or with reckless indifference to the truth. In addition, PREPA was aware that their actions were part of a pattern of racketeering.

34. The representative plaintiffs and the members of the class as defined infra, were harmed in their business or property by the use by PREPA of this pattern of racketeering. All of the representative plaintiffs and the members of the class as herein defined have been customers of PREPA for the past four years. All plaintiffs and members of the class relied on PREPA's bills for the correctness of their consumption and legality of the charges.

**COUNT 2: By Plaintiffs Against the members of the Governing Board and previous and present Executive Directors of PREPA For Violation Of 18 U.S.C. § 1962(b)**

35. Plaintiffs realllege and incorporate by reference all previous paragraphs of this complaint. The RICO statute states, *inter alia*, as follows:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

36. The averments in Count 3 as to the RICO Enterprise, the RICO Predicate Acts, the Pattern of Racketeering Activity, Relatedness and Continuity of the Racketeering Activity, are incorporated by reference as to Count 2.

37. The relevant time period for the Governing Board and previous and present Executive Directors' of pattern of racketeering as to this count stems from at least the year 2007, and likely earlier but at this point in discovery as yet unknown, and continues to the filing of this RICO Class Action Complaint.

38. Defendants Otoniel Cruz Carrillo, acting Executive Director; Miguel A. Cordero Lopez, former Executive Director; Jorge Rodriguez, former Executive Director; Members of the Governing Board Jose L. Vazquez Homs; Luis M. Garcia Passalacqua; Jose Fernandez Polo; Luis Abbott Van Der Horst; Marimar Perez Riera; Andres Salas Soler; Nydia Verge Perez; Jerome Garffer Croly; Jose Perez Canabal; Eugenio Torres Oyola; Francisco J. De Echegaray Espada; Maria A. Veras Fernandez, were and are at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b).

39. Defendants, using their control over PREPA, caused it fraudulently to send monthly bills to its customers since June 2000 that did not reflect their real consumption of electricity, that did not reflect the real cost of power purchase or the real cost of fuel used to generate the electricity consumed by them, and charges them twice for fuel and power purchase. These bills were false bills, inflated to profit them.. These actions are a pattern of racketeering as defined by the RICO and its case law. According to the  Center for the New Economy, between 2000-2004, the overcharge amounted to around $439.6 millions.  Defendants caused PREPA to use the proceeds of this pattern of racketeering performed in the past and onto many other customers not part of this class, to fund and continue with their fraudulent practices to

overcharge the representative plaintiffs and the class. These actions by Defendants have caused harm to plaintiffs and the class in their business or property.

40. In addition, Defendants have caused PREPA to invest the proceeds derived from this pattern of racketeering in maintaining an antiquated system and older technology instead of investing new technology. For example, PREPA has not made the switch to less expensive fossil fuels such as natural gas or aeolic technology because the former are less expensive than the present oil based system and would decrease the money extracted from plaintiffs and the class through the FAC. The later would do away with the FAC entirely, further decreasing the overcharges. Also, PREPA has invested the proceeds of this pattern of racketeering in hiring an excess of employees, both union and management, which increases the payroll, requiring the increase in bond emissions, costs which are passed only to the plaintiffs and the class. PREPA have also used this fraudulent scheme to incur in late charges in the payment of its fuel bills, further increasing the overbilling via the FAC.

41. Defendants have benefitted from this pattern of racketeering by receiving very generous salaries, bonifications, and per diems of such a nature that they would not otherwise receive. If not for this pattern of racketeering, Defendants would not have been able to receive said benefits. All actions by Defendants were taken intentionally or with reckless indifference to the truth. In addition, all Defendants were aware that their actions were part of a pattern of racketeering.

42. This above described pattern of racketeering permitted Defendants to maintain control over PREPA, the Enterprise, that affects interstate commerce. Plaintiffs and the Class as defined, *supra*, were harmed in their business or property by the use by PREPA of this pattern

of racketeering. All of the representative plaintiffs and the members of the class as herein defined have been customers of PREPA for the past four years.

**COUNT 3: By Plaintiffs Against the members of the Governing Board and previous and present Executive Directors of PREPA For Violation Of 18 U.S.C. § 1962(c)**

43. Plaintiffs reallege and incorporate by reference all previous paragraphs.

44. The RICO statute provides inter alia:

It shall be unlawful for any persons employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

45. The relevant time period for the Governing Board and previous and present Executive Directors' of pattern of racketeering as to this count stems from at least the year 2007, and likely earlier but at this point in discovery as yet unknown, and continues to the filing of this RICO Class Action Complaint.

46. Defendants Otoniel Cruz Carrillo, acting Executive Director; Miguel A. Cordero Lopez, former Executive Director; Jorge Rodriguez, former Executive Director; Members of the Governing Board Jose L. Vazquez Homs; Luis M. Garcia Passalacqua; Jose Fernandez Polo; Luis Abbott Van Der Horst; Marimar Perez Riera; Andres Salas Soler; Nydia Verge Perez; Jerome Garffer Croly; Jose Perez Canabal; Eugenio Torres Oyola; Francisco J. De Echegaray Espada; Maria A. Veras Fernandez were and are at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

**The RICO Enterprise**

47. Defendants have used PREPA as an "enterprise," within the meaning of 18 U.S.C. § 1961(4), to carry out its pattern of racketeering activity. Defendants possessed and continue to

possess a common purpose and goal, a membership, organizational structure, and ongoing relationships between them with sufficient longevity to permit and enable pursuit of the Enterprise's purpose and long-term objective through a continuous course of conduct that affected and continues to affect interstate and foreign commerce.

48. The Enterprise exists separate and apart from its pattern of racketeering activity, inasmuch as Defendants and the Enterprise have multiple goals, not all of which are fraudulent. The lawful activity engaged in by the Enterprise is the generation and selling of electricity to its customers. Defendants have, since at least 2007, used this enterprise to conduct the related acts of mail and wire fraud comprising the pattern of racketeering.

49. Defendants are "persons" under the civil RICO statute because they knowingly and fraudulently conducted and participated in the conduct, the management and the operation of the Enterprise's affairs, directly or indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  Defendants engaged in such unlawful conduct by using the Enterprise to conduct lawful activities as well as to further its fraudulent scheme of causing false and misleading information to be disseminated to its customers by mail or interstate wires that their bills were one amount when in reality it was another. They also caused the Enterprises customers to communicate by mail or interstate wires with it, such as paying said bills.

50. Pursuit of profit is not per se violative of the mail and wire fraud statutes or civil RICO but neither Defendants nor PREPA are supposed to profit from the services they provide. Defendants violated RICO and injured Plaintiffs and class members in their business or property by reason of its conduct of the Enterprise not to pursue gain, but to do so by unlawful means: to maximize its gain and profit through a pattern and practice of misrepresentation and

concealment of the systematic decisions that placed financial goals over the proper billing of the Enterprise's customers, that was conducted in violation of applicable laws. As the direct, proximate and foreseeable result of this illegal pattern Plaintiffs and the class have been injured businesses and property.

### The RICO Predicate Acts

51. Defendants' engaged in a fraudulent scheme to defraud the Enterprises customers to believe that their bills were correct and that the contribution to the Municipalities in lieu of taxes was being paid.

52. For the purpose of devising and carrying out their scheme and artifice to defraud the Enterprise's customers by means of false and fraudulent pretenses, representations and promises, Defendants did place in an authorized depository for mail, and knowingly caused to be delivered by the United States postal service, letters, memoranda, and other matters, in violation of 18 U.S.C. § 1341, or aided and abetted in such criminal acts, as previously described, under 18 U.S.C. § 2.

53. For the purpose of devising and carrying out their schemes and artifice to defraud the Enterprise's customers by means of false and fraudulent pretenses, representations and promises, Defendants caused to be transmitted by means of wire communication in interstate commerce, writings, signals and sounds, to wit, interstate electronic mail messages and/or facsimile in violation of 18 U.S.C. § 1343, or aided and abetted in such criminal acts, as previously described, under 18 U.S.C. § 2.

54. Examples of these predicate acts of mail and wire fraud include, but are not limited to (upon information and belief, numerous others will be identified in the process of discovery), the following:

a. Each month from 2000 on, Defendants caused the Enterprise to send Plaintiffs and the Class, thorough the U.S. mail and interstate wires, fraudulent bills that inflated the amount needed by PREPA to recover the cost of payment in lieu of taxes. These decisions were made in meetings convened using the mail or intestate wire;

b. Each month since at least 2007 on, Defendants caused the Enterprise to send Plaintiffs and the Class, thorough the U.S. mail and interstate wires, fraudulent bills that charged them twice for the purchase of fuel and power. These decisions were made in meetings convened by using the mail or intestate wire;

c. Upon information and belief, Defendants cause the Enterprise to pay in arrears its suppliers of fuel and energy, resulting in higher fuel and energy costs, which inflated the extraction of moneys through the FAC;

d. Upon information and belief, at least once a year since 2000 Defendants determined not to pay the Municipalities the 11% in lieu of taxes and kept it in the Enterprise. These decisions were taken during the regular meetings between Defendants, which were convened by mail or interstate wire.

**The Pattern Of Racketeering Activity**

55. Defendants' previously alleged RICO predicate acts in furtherance of its scheme to the Enterprise's customers constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are related and continuous. Each predicate act had the same or similar purpose: the predicate acts involved material misrepresentations, omissions and concealment in a scheme to defraud the Enterprise's customers into believing that they were being billed for the 11% in lieu of taxes, that said taxes were being paid and that they were not being charged twice for the purchase of fuel and power instead of only once all

so Defendants could fraudulently obtain thousands of dollars in salaries, per diems and bonuses. Included in these predicate acts are those situations where Defendants communicated to the Enterprise by mail, interstate wire or interstate carrier giving approval for Defendants' various actions. This pattern of racketeering is separate from and distinct from the legitimate operations of the Enterprise alleged herein.

56. Defendants are associated with the Enterprise and did conduct or participate, directly and indirectly, in the management or operation of its conduct of the affairs of the Enterprises through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), to wit:

a. Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

b. Multiple instances of wire fraud in violation of 18 U.S.C. § 1343.

57. Plaintiffs have sufficiently alleged these predicate acts and pattern of racketeering to state a claim under 18 U.S.C. § 1962. As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiffs and the Class members have suffered injury to their business and property.

**Relatedness And Continuity Of The Racketeering Activity**

58. All of the predicate acts alleged above are related to the scheme of Defendants defrauding the Enterprise's customers. The acts are all related to extract the maximum amount of revenue from the Enterprise's customers to fund Defendants' salaries, per diem's and bonuses.  Continuity is demonstrated by the predicate acts alleged above because the pattern of racketeering involves multiple predicate acts and related predicate acts that have taken place over several years. These predicate acts in furtherance of its scheme illustrate a threat of continued racketeering activity and evince that the predicate acts constitute the regular way

that Defendants conducts business. All actions by Defendants were taken intentionally or with reckless indifference to the truth. In addition, all Defendants were aware that their actions were part of a pattern of racketeering.

59. As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiffs and the Class members have suffered injury to their business and property.

**COUNT 4: By Plaintiffs Against Defendants amongst themselves and PREPA For Violation Of 18 U.S.C. § 1962(d) By Conspiring To Violate 18 U.S.C. § 1962(b) and (c).**

60. Plaintiffs reallege and incorporate by reference all previous paragraphs.

61. The statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. "

62. Defendants violated 18 U.S.C. § 1962(d) by conspiring with each other to engage in the predicate acts alleged to form the violation of 18 U.S.C. § 1962(a)((b) and (c), as described above. Defendants both agreed to the objective of this conspiracy. Defendants took overt acts in furtherance of that conspiracy.

63. The relevant time period for Defendants' conspiracy stems from at least the year 2007, and likely earlier but at this point in discovery as yet unknown, and continues to the filing of this RICO Class Action Complaint.

64. As a proximate result of the overt acts taken by Defendants, Plaintiffs and the Class Members have suffered injury to their business and property. All actions by Defendants were taken intentionally or with reckless indifference to the truth. In addition, all Defendants were aware that their actions were part of a pattern of racketeering.

**COUNT 5: By Plaintiffs Against PREPA For Violation Of 18 U.S.C. § 1962(d) By**

**Conspiring To Violate 18 U.S.C. § 1962(a).**

65. Plaintiffs reallege and incorporate by reference all previous paragraphs.

66. PREPA violated 18 U.S.C. § 1962(d) by conspiring with Defendants to engage in the predicate acts alleged to form the violation of 18 U.S.C. § 1962(a). That is, received income, directly or indirectly, from the pattern of racketeering activity previously described, and has used or invested such income, directly or indirectly, in the furtherance of this establishment or operation. PREPA and Defendants both agreed to the objective of this conspiracy. PREPA took overt acts, along with Defendants in furtherance of that conspiracy.

67. The relevant time period for PREPA's conspiracy stems from at least the year 2000, and continues to the filing of this RICO Class Action Complaint.

68. As a proximate result of the overt acts taken by PREPA and Defendants, Plaintiffs and the Class Members have suffered injury to their business and property. All actions by PREPA and Defendants were taken intentionally or with reckless indifference to the truth. In addition, PREPA and all Defendants were aware that their actions were part of a pattern of racketeering.

**JURY DEMAND**

69. Plaintiffs demand that all  questions of fact be decided by a jury.

WHEREFORE: Plaintiffs respectfully request from the Honorable Court judgment should be rendered in Plaintiffs and the Class members' favor against PREPA and Defendants, as follows:

a. An award of compensatory damages that will fairly represent the overcharge by Defendants and PREPA that caused them economic injuries to the Plaintiffs and Class members' business and property;

b. An award of treble damages herein pursuant to 18 U.S.C. § 1964(c);

c. An award of attorneys' fees pursuant to 18 U.S.C. § 1964(c);

d. Pre-judgment interest on all awards;

e. Appropriate injunctive relief forcing PREPA to stop the challenged actions;

f. An order certifying the Class and any appropriate subclasses as set forth herein under the appropriate provisions of F.R.C.P. 23, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel as counsel for the Class; and

g. All further relief as the Court and/or the jury may deem appropriate, legal or equitable, in any form to which Plaintiffs may be entitled.

Respectfully submitted on this    th day of  October, 2011.

/s John E. Mudd

John E. Mudd
Bar Number: 201102
Attorney for Plaintiffs
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787)754-7698, (787)413-1673
Fax. (787)753-2202
email jemudd@yahoo.com